IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD LEE MCDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-CV-5417 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| SALEH OBAISI and ) | |
| WEXFORD HEALTH SOURCES INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

The plaintiff, Donald Lee McDonald ("McDonald"), is a prisoner at Stateville Correctional Center ("Stateville") in Joliet, Illinois. 1st Am. Compl. ("FAC") ¶ 4, ECF No. 19. This litigation concerns his medical care. McDonald alleges that he has suffered from spinal stenosis for years. Spinal stenosis "is a narrowing of the open spaces in the spine, which can put pressure on the spinal cord and the nerves that travel through the spine to the arms and legs." FAC at 3 n.1 (citation omitted). McDonald has complained of severe, chronic lower back pain for years, but, he alleges, Stateville medical personnel have provided, and continue to provide, inadequate care. *See* FAC ¶¶ 7–14. As a result, McDonald claims that he has needlessly suffered agonizing pain and that he still needs surgery. FAC at 1. In his amended complaint, which the court refers to simply as the complaint, McDonald brings claims under 42 U.S.C. § 1983, the Eighth Amendment, and Illinois law. Defendants move to dismiss three counts for failure to state a claim upon which relief can be granted. For the following reasons, the court grants the motion in part and denies it in part.

**I. BACKGROUND**

This case is a partial sequel to *McDonald v. Wexford Health Sources, Inc.*, No. 1:09-cv-

04196 (N.D. Ill.). *See generally McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196, 2015 WL 3896929, at *1–4 (N.D. Ill. June 23, 2015) (summarizing claims and evidence at summary judgment). McDonald names two defendants in this case: Wexford Health Sources, Inc. ("Wexford") and Dr. Saleh Obaisi ("Obaisi"). Under contract with the Illinois Department of Corrections, Wexford provides medical care to Stateville prisoners, FAC ¶ 5, and Obaisi "is responsible for implementing, overseeing, and supervising medical care at Stateville," FAC ¶ 6. McDonald sues Obaisi in his individual capacity. FAC ¶ 6. The prior McDonald case concerned McDonald's medical care during an earlier period in which Dr. Parthasarathi Ghosh served as Stateville's medical director. *See* FAC at 4 n.2.

The court takes the following facts from the complaint and accepts them as true for purposes of deciding defendants' motion. McDonald suffered severe lower back pain for years before 2013. He "consistently requested medical attention from Wexford staff to reduce or eliminate the pain." FAC ¶ 7. By April 2013, the pain had begun to spread to his extremities. FAC ¶ 8. Obaisi considered ordering two diagnostic tests, an MRI (magnetic resonance imaging) and EMG (electromyography), to diagnose McDonald but decided not to do so. FAC ¶ 8. Another Wexford employee whose identity is unknown reevaluated McDonald on August 30, 2013. FAC ¶ 9. The unknown doctor recommended that Obaisi reevaluate McDonald and scheduled an appointment with Obaisi, but the reevaluation never took place. FAC ¶ 9. Almost two years later, on July 28, 2015, Obaisi ordered an MRI and EMG. FAC ¶ 10. The findings in the report on the MRI, which Wexford received in September 2015, were "significant," prompting Wexford doctors "to "suspect surgery will be necessary sooner rather than later." FAC ¶ 11 (quoting unspecified source). Another unknown Stateville doctor recommended that McDonald receive a neurosurgical consultation. FAC ¶ 11.

McDonald alleges that Wexford staff provided improper and inadequate care before and after he was diagnosed with spinal stenosis. FAC ¶¶ 12–14. For instance, Obaisi and other Wexford doctors sometimes prescribed pain medication for McDonald, but Wexford employees, such as nurses, refused to distribute it to him. FAC ¶ 13. McDonald asked them why, but he got no answer. FAC ¶ 13. He had yet to receive surgery when he filed his first amended complaint. FAC at 1.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. § 1983 CLAIMS

In 42 U.S.C. § 1983, Congress created a damages remedy for violations of federal law by a person acting "under color of" state law. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). In count seven, McDonald seeks to impose § 1983 liability on Wexford, a private corporation which has been contracted by the Illinois Department of Corrections to provide medical services at Stateville, under the doctrine of respondeat superior. Count three aims to hold Wexford and Obaisi liable under a "supervisory liability" theory.

### A. Respondeat Superior For Wexford (Count Seven)

The well-established doctrine of respondeat superior "makes employers liable for their employees' actions within the scope of their employment." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793 (7th Cir. 2014) (citing Restatement (3d) of Agency § 2.04 (2006)) (other citations omitted). McDonald asserts that Wexford is vicariously liable for its employees' actions, including Obaisi's, under Illinois law. FAC ¶¶ 56–57. Defendants do not take issue with McDonald's use of respondeat superior for his claims under Illinois law. But, Wexford contends, McDonald cannot use respondeat superior to impose vicarious liability on it under § 1983. *See* FAC ¶ 58 (alleging that "Wexford, as a private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment").

As McDonald concedes, Wexford wins this argument under binding Seventh Circuit precedent. FAC at 15 n.4; Resp. to Mot. to Dismiss 15 ("Resp."), ECF No. 36. The Seventh Circuit explained in *Shields*, *supra*, that its "controlling precedents" hold that "a private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by

an unconstitutional policy or custom of the corporation itself. Respondeat superior liability does not apply to private corporations under § 1983." *Shields*, 746 F.3d at 789 (citing *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). *Shields* upheld the dismissal of a § 1983 claim against Wexford for this very reason. *Id.* But the *Shields* court opined that this rule "deserve[s] fresh consideration, though it would take a decision by [the Seventh Circuit] sitting en banc or pursuant to Circuit Rule 40(e), or a decision by the Supreme Court to overrule" controlling Seventh Circuit precedent. *Id.*; *see also id.* at 789–96; *id.* at 801 (Tinder, J., concurring in the judgment). Based on this language, McDonald says that he pleaded his § 1983 respondeat superior theory to preserve it for possible appeal. Resp. 15. Because this court must follow binding Seventh Circuit precedent until the Seventh Circuit or Supreme Court tells it to do otherwise, this court dismisses the FAC's § 1983 respondeat superior allegations. *See Collins v. Al-Shami*, 851 F.3d 727, 734 (7th Cir. 2017) (citations omitted) (reaffirming rule that "[u]nder existing precedent, neither public nor private entities may be held vicariously liable under § 1983"); *Shields*, 746 F.3d at 789.

**B. The "Supervisory Liability" of Both Defendants (Count Three)**

McDonald titled count three as a § 1983 claim against all defendants premised on "failure to train or supervise." FAC at 9. He alleges that Wexford and Obaisi "were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care to inmates." FAC ¶ 30. They "had notice of widespread policies and practices by healthcare and correctional employees at Stateville pursuant to which prisoners like Mr. McDonald with serious medical needs were routinely denied medical care and access to medical care." FAC ¶ 31; *see also id.* ¶¶ 24–25 (alleging nine specific policies or customs and describing report from which defendants obtained knowledge of policies and practices). By

5

"fail[ing] to provide adequate training and supervision," defendants allegedly "allowed [these widespread policies and practices] to flourish." *Id.* ¶ 33.

In their briefing, the parties cite a mix of supervisory-liability cases and cases applying the rules for imposing liability on a municipality stemming from *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "There is a difference between supervisory liability and municipal liability for failure to train or supervise." *Lessley v. City of Madison*, 654 F. Supp. 2d 877, 910 (S.D. Ind. 2009); *accord Almaraz v. Haleas*, 602 F. Supp. 2d 920, 925 (N.D. Ill. 2008). For what is referred to as supervisory liability to attach, a defendant acting under color of state law, "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)) (alteration in original); *accord Lessley*, 654 F. Supp. 2d at 910 (quoting *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997)); *Almaraz*, 602 F. Supp. 2d at 925 (citation omitted). A supervisor cannot be held individually liable under § 1983 for a constitutional violation unless the plaintiff can show that the supervisor was "personally involved" in the violation in this way. *Gill*, 850 F.3d at 344 (quoting *Matthews*, 675 F.3d at 708). In contrast, supervisory liability for a constitutional violation under *Monell* "is not limited to the Supervisory Defendants' personal knowledge and participation." *Almaraz*, 602 F. Supp. 2d at 926. The *Monell* inquiry focuses not so much on personal involvement as on the relationship between an official custom or policy and the constitutional deprivation; it asks whether the deprivation was "caused by an express policy, a widespread practice or custom, or the deliberate act of a policymaking official." *Id.* (quoting *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002)); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir.

2010), *as am. on denial of pet. for reh'g en banc* May 3, 2010. The two inquiries can and do lead to supervisory liability for individual defendants without *Monell* liability and vice versa. *See Lessley*, 654 F. Supp. 2d at 909–10 (granting officers summary judgment on supervisory liability and denying city summary judgment on *Monell* theory); *Almaraz*, 602 F. Supp. 2d at 926 (concluding that "any liability of the City based on the act of a policymaking official would be distinct from the Supervisory Defendants' liability" because supervisors were not policymakers).

Because plaintiff brings count three against both defendants, the court analyzes it under both theories. While the complaint states a *Monell* claim against Wexford, it fails to allege Obaisi's personal involvement in his subordinates' alleged misconduct.

1. The *Monell* Theory

Defendants rely principally on a *Monell* case, *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir. 1985), to argue that McDonald needs to plead more specific facts in support of count three. Several judges sitting in the Seventh Circuit have recognized that the Supreme Court disapproved *Strauss* when it rejected a heightened pleading standard for § 1983 claims against a municipality in its unanimous opinion in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). *E.g.*, *Marcavage v. City of Chicago*, 467 F. Supp. 2d 823, 828 (N.D. Ill. 2006), *rev'd in part on other grounds*, 659 F.3d 626 (7th Cir. 2011); *Brogan v. Bd. of Educ. of City of Chicago*, 152 F. Supp. 2d 1082, 1083–84 (N.D. Ill. 2001); *Wolf v. City of Chi. Heights*, 828 F. Supp. 520, 524 (N.D. Ill. 1993); *see also McCormick v. City of Chicago*, 230 F.3d 319, 323–25 (7th Cir. 2000) (repudiating fact pleading after *Leatherman*).

Defendants cite a pair of cases to show that district courts in the Seventh Circuit "routinely extend" *Strauss*. Mot. to Dismiss 4, ECF No. 33. But neither cites *Strauss* or a case

7

endorsing it. *See Carter v. Elyea*, No. 11 C 2914, 2012 WL 3779064, at *5 (N.D. Ill. Aug. 31, 2012); *Coe v. Sloan*, No. 3:10-cv-311-GPM-DGW, 2011 WL 5967261, at *7-8 (S.D. Ill. Oct. 11, 2011), *report and recommendation adopted* 2011 WL 5980348 (S.D. Ill. Nov. 29, 2011). Instead, both cases apply Rule 8(a) pleading standards to supervisory-liability and failure-to-train allegations. *See Coe*, 2011 WL 5967261, at *7-8 (citing and applying *Twombly*, 550 U.S. at 555–56); *Carter*, 2012 WL 3779064, at *5 (quoting *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) and *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). Thus, the analytical framework *Coe* and *Carter* employed accords not with *Strauss* but with *Leatherman* and Rule 8(a) as it was interpreted in *Twombly* and *Iqbal*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 526 (2016).

More importantly for purposes of burying *Strauss*, the Seventh Circuit has held that "[t]he *Leatherman* holding has survived the Court's later civil pleading decisions in *Iqbal* and *Twombly*, which require the pleader to allege a 'plausible' claim." *White*, 829 F.3d at 844 (citations omitted). *White* clarified how much factual material must be pleaded to make the existence of a widespread custom or practice plausible. The complaint in *White* stated that:

> In accordance with a widespread practice of the police department of the City of Chicago: [a police officer] requested the judge to issue a warrant on the basis of [the officer]'s conclusory allegation that other law enforcement officers claimed or believed plaintiff had committed an offense, and [the officer] did not present the judge with an affidavit setting out any affirmative allegation of facts that would indicate that plaintiff had committed an offense.

*White*, 829 F.3d at 844. That allegation "[t]ogether with the individual claim against [the officer]" sufficed to allege the existence of a widespread custom or practice. *Id.* The court held that "White was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process." *Id.* (citing *Jackson v. Marion Cnty.*, 66 F.3d 151, 152–53 (7th Cir. 1995)).

8

After *White*'s clarification of what a § 1983 plaintiff must plead, count three's allegations, viewed as a *Monell* claim, satisfy Rule 8(a). As Judge Dow, who authored *Carter*, *supra*, recently observed, district courts have relied on *White* to "scotch[ ] motions to dismiss" premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Williams v. City of Chicago*, No 16-cv-8271, 2017 WL 3169065, at *9 (July 26, 2017) (quoting *Stokes v. Ewing*, No. 16 C 10621, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017)) (collecting cases). By citing *Strauss*, defendants demand a holding that the complaint detail more incidents to support the alleged customs listed in count three. As it happens, McDonald's complaint references a 2010 report describing more incidents of alleged inadequate care, supervision, and training at Stateville. *See* FAC ¶ 24 (citing *id.* App. A). McDonald might get extra credit for identifying additional incidents supporting his alleged policies and custom, but his complaint passes the Rule 8(a) test without them under *White*. *See White*, 829 F.3d at 844. McDonald alleges that he repeatedly sought medical care for his back pain over a seven-year period, and Wexford employees provided him constitutionally inadequate care. *See* FAC ¶¶ 13–14. He gives three examples (depending on how they are counted). *See* FAC ¶¶ 7–14. He then pleads that Wexford had nine widespread customs and practices of subpar supervision and training—the report he cites called it a "leadership vacuum"—at Stateville which led to his alleged constitutional deprivations. *See id.* ¶¶ 24, 31–34. Together, these allegations provide enough factual detail to give Wexford fair notice of the grounds on which McDonald's efforts to impose *Monell* liability in count three rest. *See White*, 829 F.3d at 843; *Williams*, 2017 WL 3169065, at *9 ("Under the binding precedent set by *White*, Plaintiff's allegations of a pattern or practice of ignoring complaints of discrimination are enough to survive a motion to dismiss." (internal citation omitted)).

2. Supervisory Liability

Though it states a *Monell* claim, the complaint does not raise a plausible inference that Obaisi was personally involved in his subordinates' alleged constitutional violations. For prisoners, the supervisory-liability test means that "to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (citing *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015)) (other citation omitted).

The Seventh Circuit most recently considered the sufficiency of a complaint's allegations of personal liability in *Gill*, *supra*. *See also McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011) (applying *Twombly* and *Iqbal* to *Monell* allegations). As the Seventh Circuit described it, the complaint in *Gill* contained a bald allegation that a city police chief "failed to train the detectives [allegedly involved in the underlying constitutional violation] adequately and that [the chief] was 'deliberately and recklessly indifferent' to the detectives' actions." *Gill*, 850 F.3d at 344. Those allegations, the court held, were too conclusory to raise the plausible inference that the chief "knew about or was personally involved in the specific conduct" about which the plaintiff complained, so the complaint failed to state a claim that the chief should be held liable under a supervisory or failure-to-train theory. *Id.* McDonald's supervisory-liability allegations fail for similar reasons.

To be clear, McDonald alleges that Obaisi personally made certain decisions. They include (without limitation) the decision not to seek a diagnostic test in 2013, his decision not to reevaluate McDonald in August–September 2013, the delay in surgery, and the decision in 2015 not to seek a surgical consult. *See* FAC ¶¶ 8–9, 12. The court does not understand Obaisi to be asking for dismissal of McDonald's claims against him stemming from those decisions or any

10

other decision in which he was personally involved. Nor could he. *See Heard v. Tilden*, 809 F.3d 974, 981 (7th Cir. 2016) (per curiam) (holding that "allegation that [prison medical director who was also doctor] was involved directly in the choice to stall necessary surgery and prolong [the plaintiff]'s pain is enough to state a claim" for individual liability (citing *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) and *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011))); *see also McDonald v. Wexford Health Sources, Inc.*, 2015 WL 3896929, at *9 (N.D. Ill. June 23, 2015) (finding fact issue precluded summary judgment on previous Stateville medical director's personal involvement in McDonald's care). So Obaisi is on the hook for his own alleged conduct and conduct in which he was personally involved.

Nevertheless, the court can find nothing in the complaint raising the inference that Obaisi was aware of or involved in the particular misconduct in which his subordinates allegedly engaged. McDonald pleads, for instance, that Wexford employees refused for no reason to give him prescribed pain medication. FAC ¶ 13. But no well-pleaded facts support the inference that Obaisi was specifically aware of the problem. *See id.* (alleging that McDonald asked "Wexford personnel" why he wasn't receiving medication and got no answer but omitting mention of Obaisi). McDonald does not allege, for instance, that he spoke to Obaisi or sent him a letter about any of the incidents of inadequate care described in the complaint. *Cf.*, *McDonald*, 2015 WL 3896929, at *9 (N.D. Ill., June 23, 2015) (finding fact issue precluded summary judgment based in part on evidence that McDonald complained to Stateville's medical director when they met in a hallway); *Rendon v. Wexford Health Sources, Inc.*, No. 10-cv-1410, 2011 WL 2669211, at *12 (C.D. Ill. July 7, 2011) (finding allegations that prisoner addressed letter to psychiatrist insufficient to state claim for supervisory liability because plaintiff did not allege that she had any other contact with psychiatrist and did not allege that letter was received or read). In sum,

11

the complaint includes "no allegation or plausible inference that [Obaisi] knew about or was personally involved in the specific conduct" of his subordinates about which McDonald complains. *Gill*, 850 F.3d at 344; *see also Rasho*, 856 F.3d at 469 (affirming entry of summary judgment for prison officials where prisoner produced no evidence that two supervisors, "realized that something was amiss" with treating doctor's medical decision).

## IV. CLAIMS UNDER ILLINOIS LAW

McDonald brings a claim for intentional infliction of emotional distress against Obaisi in count four. Counts five and six plead negligence claims against him.

Obaisi moves to dismiss count six because McDonald did not attach an affidavit and a physician's report or certificate to his complaint as he contends § 2-622 of the Illinois Code of Civil Procedure required. *See* 735 Ill. Comp. Stat. 5/2-622(a) (West 2017). That section requires an affidavit and a report or certificate to be attached to the complaint "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." *Id.* McDonald and Obaisi dispute whether count six is a malpractice claim covered by § 2-622(a). McDonald maintains that he seeks to hold Obaisi liable as a supervisor for failing to follow the prescriptions, orders, and advice of medical providers rather than for his own medical malpractice. *See* Resp. 12–13.

The Seventh Circuit applied the requirements of § 2-622 to claims for medical malpractice against a prison doctor who served as a prison's medical director in *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000). The prisoner in that case received medical care from the director and three nurses for abdominal pain and other symptoms of what turned out to be appendicitis. *See id.* at 608–09. He attached a § 2-622(a) certificate to his complaint, but the district court found the certificate insufficient and dismissed his malpractice claim with

prejudice. *Id.* at 613. The Seventh Circuit held that dismissing without leave to amend was an abuse of discretion. *Id.* at 613–14. It reasoned that the certificate at least approached the "borderline" of sufficiency and explained that "when the certificate was filed but failed in some technical or minor respect, sound discretion also requires [the court to give the plaintiff] an opportunity to amend." *Id.* at 614 (citing *Apa v. Rotman*, 680 N.E.2d 801, 804 (Ill. App. Ct. 1997)). So even if the court finds that a § 2-622(a) certificate is required for count six, McDonald must be given an opportunity to amend his complaint.

*Sherrod* proves instructive because McDonald alternatively requests leave to add a § 2-622(a) certificate to his complaint. *See* Resp. 12; Proposed certificate, ECF No. 36-1. The defendants reply that they intend to challenge the certificate's sufficiency if McDonald is allowed to file it. Reply 8 n.3, ECF No. 37. *Sherrod* teaches that if § 2-622 applies to count six, McDonald should receive leave to file his proposed certificate.

The proposed certificate has the potential to moot the question of whether a § 2-622(a) certificate is required for count six, leaving the court on the horns of a dilemma. If the court later rules that § 2-622(a) did not require a certificate for count six, litigating the certificate's sufficiency will have been a waste of effort. If, on the other hand, McDonald's proposed certificate passes muster under § 2-622(a), determining whether it was required will have been unnecessary. Had McDonald not filed a proposed certificate, deciding whether one is required would be the first order of business. But since McDonald has already gone to the trouble of obtaining a certificate, litigating its sufficiency may yield a fringe benefit. The process may produce more specifics about what care McDonald contends he should have received—something that is at issue anyway in McDonald's Eighth Amendment claims. *Cf.* § 2-622(a)(1);

13

*Sherrod*, 203 F.3d at 614 (criticizing certificate as "not a model of specificity" and holding that district court should have granted leave to amend it).

Because it is the option more likely to advance this litigation overall, the court will grant McDonald leave to amend his complaint to add his proposed certificate. Defendants may of course litigate the certificate's sufficiency, and if the certificate contains a technical defect, McDonald will get a chance to try to fix it, as *Sherrod* requires. If the amended certificatge still misses the mark under § 2-622(a), the court will return to the question of whether it was required.

## V. CONCLUSION

For the reasons stated, defendants' motion to dismiss, ECF No. 33, is granted in part and denied in part. The court partially dismisses count three of the FAC, ECF No. 19, to the extent it alleges that Obaisi is liable under a theory of supervisory liability. The court also partially dismisses count seven to the extent it seeks to impose liability under § 1983 based on respondeat superior. McDonald may amend his complaint to attach his proposed § 2-622(a) certificate, ECF No. 36-1. The amended complaint is due on or before September 27, 2017.


Date:   September 13, 2017                                /s/
                                                   Joan B. Gottschall
                                                   United States District Judge

14