## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DONALD LEE MCDONALD, | ) |
| Plaintiff, | ) |
| | ) No. 16 C 5417 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| SALEH OBAISI and WEXFORD HEALTH SOURCES INC., | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Donald Lee McDonald, a prisoner at Stateville Correctional Center ("Stateville") in Joliet, Illinois, brings this lawsuit under 42 U.S.C. § 1983 and Illinois state law against Defendants Dr. Saleh Obaisi[1] and Wexford Health Sources Inc. ("Wexford"). McDonald alleges that Defendants violated his rights under the Eight Amendment to the Constitution by denying him appropriate medical treatment (Counts I and II), failing to train or supervise the staff of Stateville who denied him medical treatment (Count III), and failing to intervene to prevent McDonald's constitutional rights from being violated (Count IV). McDonald also alleges that Defendants intentionally inflicted emotional distress upon him by denying him medical evaluation and treatment (Count V) and that Defendants engaged in negligent or willful and wanton conduct against him by ignoring his requests for medical attention and failing to provide him with medical treatment prescribed to him by doctors (Count VI). Defendants now move to dismiss [62] Count VI, the negligence or willful and wanton conduct claim, arguing that it is in reality a claim for medical malpractice under Illinois law that it is not adequately supported by a

---

[1] Dr. Obaisi recently passed away. Dr. Obaisi's counsel has represented to the Court that it is awaiting an assignment of a Trustee for his estate, at which time it will file a notice of death of a party. McDonald's counsel states that McDonald intends to proceed against Dr. Obaisi's estate and will file a motion to substitute party once defense counsel files the notice of death.

report from a qualified medical professional as required under 735 Ill. Comp. Stat. 5/2-622. Because Count VI seeks to hold Defendants liable for conduct arising from the exercise of Dr. Obaisi's professional medical judgment, the Court finds that Count VI is properly construed as a medical malpractice claim. And because the attached expert report does not adequately state the basis for finding Dr. Obaisi failed to satisfy the standard of care in treatment of McDonald, the Court grants the motion to dismiss Count VI without prejudice.

## BACKGROUND[2]

McDonald has been suffering severe lower back pain and sciatica since before 2013. While incarcerated at Stateville, he has consistently requested medical attention to address this back pain. In 2013, the pain began to worsen. Dr. Obaisi, at that time, considered ordering Magnetic Resonance Imaging ("MRI") and Electromyography ("EMG") tests of McDonald to aid in diagnosing his condition, but did not do so. A few months later, a different Wexford doctor examined McDonald and recommended Dr. Obaisi reevaluate him, but this evaluation did not occur.

Two years later, in July 2015, Dr. Obaisi ordered the MRI. After two months, the results came back and an unnamed Wexford physician recommended that McDonald receive a neurosurgical consultation and noted that he suspected that "surgery will be necessary sooner rather than later." Doc. 54 ¶ 11. McDonald still has not received this consultation. He has periodically seen medical professionals employed by Wexford and they have prescribed him pain medication, though he does not always receive this medication.

---

[2] The facts in the background section are taken from McDonald's Second Amended Complaint and are presumed true for the purpose of resolving the Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

McDonald attached to his Second Amended Complaint ("SAC") a report from Dr. Irwin M. Siegel ("Siegel Report"). The Siegel Report states that Dr. Siegel is qualified in the field of Orthopedic Surgery and that he currently practices in that field. It states that Dr. Siegel has reviewed McDonald's medical records. He concludes that despite frequent complaints of back pain, McDonald has not received proper treatment and has experienced delays in receiving appropriate diagnostic testing for several years. The report states that Wexford physicians were aware of McDonald's condition but have failed to provide him with adequate care and have delayed providing him with appropriate consultations, including a consultation with a neurological surgeon. The report states that Dr. Siegel believes there is meritorious basis for a medical malpractice claim against the medical professionals involved in McDonald's care.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Defendants argue that McDonald's negligence or willful and wanton conduct claim is actually a medical malpractice claim subject to the requirement that it be supported by a report from a qualified medical doctor pursuant to 435 Ill. Comp. Stat. 5/2-622, and that the Siegel Report is not sufficient. McDonald counters that the claim is not one for medical malpractice and even if it were, the Siegel Report satisfies his obligations under Section 2-622.

**I.     Requirement of a Section 2-622 Report**

Whether a claim requires a Section 2-622 report depends on whether the claim is one "in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." *Woodard v. Krans*, 600 N.E.2d 477, 486, 234 Ill. App. 3d 690, 175 Ill. Dec. 546 (1992) (quoting 735 Ill. Comp. Stat. 5/2-622). If the conduct at issue "is inherently one of medical judgment," then a Section 2-622 report is required. *Thomas ex rel. Smith v. Cook County Sheriff*, 401 F. Supp. 2d 867, 877 (N.D. Ill. 2005) (quoting *Lyon v. Hasbro Indus.*, Inc., 509 N.E.2d 702, 705, 156 Ill. App. 3d 649, 109 Ill. Dec. 41 (1987)). Illinois courts have stated that there are three types of negligence suits that are typically directed at medical providers, and only the third of these is exempted from the requirements of Section 2-622. *Woodard*, 600 N.E.2d at 487–88. These types of suits are: "(1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers." *Id*. And the type of case against a health care provider that does not require a Section 2-622 report is "an exceptional one." *Id.* at 488.

Here, McDonald alleges in Count VI that Dr. Obaisi "[i]n providing medical care to Mr. McDonald or holding [himself] out as [a] professional[ ] who [was] rendering care to Mr.

McDonald, Dr. Obaisi had a duty to possess and apply the skill and care of reasonably well-qualified medical professional[ ] in similar circumstances." Doc. 54 ¶ 52. McDonald also asserts that Dr. Obaisi "refused to properly treat Mr. McDonald's back pain, or ensure that he received access to proper medical care, including surgery." *Id.* at ¶ 7.

McDonald argues that "Count VI does not seek to hold Dr. Obaisi liable for lapses in medical judgment; instead it seeks to hold him liable for his failings as *director* of the medical care at Stateville." Doc. 66 at 11. McDonald asserts that Dr. Obaisi's alleged failures to address his medical needs do not "implicate[ ] Dr. Obaisi's medical knowledge or expertise." *Id.* This argument is belied by the allegations of the SAC. McDonald does not begin to explain how Dr. Obaisi, a medical doctor, acting in his role as Medical Director, overseeing the decisions about McDonald's medical care, could possibly make decisions about what care McDonald did and did not receive without implicating his medical knowledge or expertise. The first paragraph of the background section of the SAC states that "Mr. McDonald, who suffers from spinal stenosis that requires surgery . . . has consistently requested medical attention from Wexford staff to reduce or eliminate the pain. Nevertheless, Dr. Obaisi . . . refused to properly treat Mr. McDonald's back pain, or ensure that he received access to proper medical care, including surgery." Doc. 54 ¶ 7. The background section goes on to list times Dr. Obaisi considered medical treatment for McDonald but did not follow through on it. In Count VI, McDonald again states that Dr. Obaisi ignored his requests for medical treatment, failed to provide him with treatment prescribed to him by medical doctors, that he was aware that these actions would probably injure McDonald, and that based on his medical records, Dr. Siegel concluded that McDonald has a "meritorious basis for filing medical malpractice claims against Defendants." *Id.* ¶ 59. In other sections of the SAC, incorporated into Count VI, McDonald states that Dr. Obaisi acted with "clear

5

knowledge of Mr. McDonald's serious medical needs." *Id.* ¶ 40. All of these allegations point to a claim that Dr. Obaisi was responsible for the medical care of McDonald and failed to exercise his judgment as a medical professional in a manner consistent with the applicable standard of care. There is almost no support for the assertion that Dr. Obaisi's failure was one of a lay administrator.

McDonald points to three cases where a health care professional was sued for negligence but a Section 2-622 report was not required. The present case is distinguishable from all three. First, in *Milos v. Hall*, 757 N.E.2d 654, 325 Ill. App. 3d 180, 258 Ill. Dec. 965 (2001), the defendant was a medical doctor acting as a coroner. The court concluded that a Section 2-622 report was not required because performing a post-mortem examination does not fall under the definition of the "healing arts." *Id.* at 658. Next, McDonald directs the Court to *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500 (N.D. Ill. Apr. 9, 2012). In that case the court found that a Section 2-622 report was not required because the alleged harm did not "arise out of the unreasonable application of the Defendant's expertise in medicine." *Id.* at *4. Whereas in the present case, the allegations all relate to Dr. Obaisi's failure to act in a manner consistent with the medical standard of care.

Finally, McDonald cites to *Thomas ex rel. Smith v. Cook County Sheriff*, 401 F. Supp. 2d 867 (N.D. Ill. 2005). In *Thomas*, the plaintiff alleged that the defendant physicians willfully and wantonly engaged in actions that caused plaintiff's son's death. However, because the plaintiff alleged that "anyone observing [the decedent] could see that he was obviously in serious need of urgent medical attention," their refusal to render aid was not one that inherently involved their medical judgment. *Id.* at 878. McDonald has made no such allegation that anyone observing his

6

condition or reviewing his medical reports would have known that he required additional medical care or even surgery.

Therefore, Count VI is subject to the requirements of Section 2-622 and the Court turns to whether the Siegel Report satisfies these requirements.

**II.     Siegel Report**

Under Illinois law, a party bringing a claim for medical malpractice or any other "healing arts malpractice" is required to attached two documents to his or her complaint: "(1) an affidavit certifying she had consulted with a qualified healthcare professional in whose opinion there is a reasonable and meritorious cause for the filing of the action, and (2) a copy of that health professional's written report setting forth the reasons for his determination." *Walsh v. Cheruku*, 2016 IL App (4th) 160194-U, 2016 WL 7338701 at *3 (citing 735 Ill. Comp. Stat. 5/2-622(a)). McDonald has not filed the first document, but neither party raised this point, so the Court addresses only whether the written report attached to the SAC meets the requirements under Section 2-622.

The physician's report must "clearly identify[ ] the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." 735 Ill. Comp. Stat. 5/2-622(a)(1). "Illinois courts liberally construe a physician's certificate of merit in favor of the malpractice plaintiff and recognize that the statute is a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success." *Hull v. S. Illinois Hosp. Servs.*, 826 N.E.2d 930, 933, 356 Ill. App. 3d 300, 292 Ill. Dec. 494 (2005).

Defendants argue that the Siegel Report is deficient as it fails to mention Dr. Obaisi by name even once. However, such an omission is not fatal where it is clear from reading the report

7

and the complaint together that certain acts and omissions in the report are attributable to Dr. Obaisi. *See Ebbing v. Prentice*, 587 N.E.2d 1115, 1118, 225 Ill. App. 3d 598, 167 Ill. Dec. 500 (1992) (finding a report sufficient where it did not name the defendant physicians, but it was clear that report referred to the defendants based on the allegations in the complaint). The Siegel Report states that "medical professionals at Stateville failed to exercise adequate medical judgment" when they ignored McDonald's elevated CPK test, delayed providing him with an orthopedic consultation, and never sought a neurosurgical consultation for McDonald. With regard to the CPK test it is never mentioned in the SAC (CPK is never even defined), let alone mentioned with respect to Dr. Obaisi.[3] The SAC states that Dr. Obaisi discussed ordering imaging tests in 2013, but did not do so until 2015. However, neither the SAC nor the report state that Dr. Obaisi was aware that a Wexford physician stated that based on the imaging report, McDonald should receive a neurosurgical consult and would require surgery sooner rather than later. Taken all together, the allegations directly against Dr. Obaisi in the SAC are not sufficient for the Court to determine which allegations of malpractice listed in the Siegel Report are actually attributable to him.

Defendants also argue that even if the Court were to find that the Siegel Report sufficiently identifies actions Dr. Obaisi took, the report still fails to meet the requirements of Section 2-622. More important than identifying the correct physician, a Section 2-622 report must "clearly identify the reasons that a meritorious cause exist[s]." *Avakian v. Chulengarian*, 766 N.E.2d 283, 295, 328 Ill. App. 3d 147, 262 Ill. Dec. 663 (2002). The report must "state with

---

[3] The Defendants also argue that the CPK test cannot support a basis for Dr. Obaisi's liability because it occurred before Dr. Obaisi began working at Stateville; a fact of which Defendants assert the Court can take judicial notice. McDonald argues that the dates of Dr. Obaisi's employment are not in the SAC and therefore, not properly before the Court on a motion to dismiss. However, because the CPK test does not even appear in the SAC and Dr. Siegel does not identify Dr. Obaisi as the one who ignored it, the Court does not consider it and need not reach the issue of whether it is properly subject to judicial notice.

8

precision that the acts fell below the standard of care and why." *Id.* The report states that McDonald had an abnormal CPK test, which is "a possible indicator of neuromuscular disease," and that the medical staff had not done any follow up testing. Doc. 54-1 ¶ 4. The report does not state what follow-up testing should have been done or what this additional testing may have revealed. Next the report states that McDonald received an MRI which showed "a lumbosacral spine," but the medical personnel delayed in scheduling an orthopedic consultation for McDonald. *Id.* ¶ 5. It is not explained what a "lumbosacral spine" is,[4] and there is no indication of how long a physician has from receiving imaging showing whatever anomaly McDonald's imaging showed to scheduling a consultation without breaching the standard of care.

The report next states that McDonald has not received a neurosurgical consultation despite it being recommended by an unnamed doctor. The report states that this failure violates the standard of care, but does not explain how the neurosurgical consultation would aid McDonald in receiving medical treatment. Failing to provide a consultation alone is not medical malpractice. The report needs to state what course of treatment this denial is preventing McDonald from receiving, and how that course of treatment would improve his condition in relation to his present course of treatment or lack thereof. The report as it stands does not explain clearly what McDonald is suffering from beyond "low back pain and sciatica," i*d.* ¶ 2 , what course of treatment he is being denied, or how that course of treatment would help him. This is not sufficient under Section 2-622. *Jacobs v. Rush N. Shore Med. Ctr.*, 673 N.E.2d 364, 367, 284 Ill. App. 3d 995, 220 Ill. Dec. 452 (1996) (to satisfy Section 2-622, expert report must contain more "than a 'generalized conclusion' of malpractice.").

---

[4] In fact, it appears that the report is missing a word following lumbosacral spine, such as stenosis, pain, or injury. Lumbosacral is an area of the spine, not a particular diagnosis.

Thus, the Siegel Report fails to satisfy Section 2-622 and the Court grants the motion to dismiss Count IV without prejudice. *See Sherrod v. Lingle*, 223 F.3d 605, 613–14 (7th Cir. 2000) (reversing a dismissal with prejudice of a Illinois medical malpractice claim for failing to comply with Section 2-622 when the first attempt "approached the borderline of acceptable detail").

## CONCLUSION

For the foregoing reasons the Court grants the motion to dismiss Count VI without prejudice.

Dated: March 2, 2018

_____
SARA L. ELLIS
United States District Judge